# Tarver *v.* Haines.

55   503
116   424

*Statutory Real Action in Nature of Ejectment.*

1. *Sale of lands by sole acting, or surviving executor, under power or devise.*— The statute which authorizes a surviving, or sole acting executor, and also an administrator with the will annexed, to sell lands under a power of sale conferred by the will on executors (Rev. Code, § 1609), abolishes the distinction, which existed at common law, between a naked power of sale given to executors, and a devise to them with directions to sell ; but it does not apply to or affect a discretionary power of sale, conferred on executors as a matter of personal trust and confidence.

2. *Same.*—Where a testator directed that his estate should be kept together by his executors, who were his oldest son, a son-in-law, and daughter, and his lands cultivated as usual, until his youngest child arrived at the age of twenty-one years ; and then added, "If, however, in the opinion of said executors, it shall at any time be thought prudent and desirable to sell my real estate, or any part thereof, or to purchase other real estate, then I will and direct that discretion be allowed and exercised by them ;" *held*, that the sole acting executor, after the resignation of the others, could not exercise this discretionary power of sale ; and that his deed to the purchaser, while it might operate by way of estoppel against himself, did not affect the title of the other heirs and devisees.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by the appellants, who were children and heirs-at-law of Benjamin F. Tarver, deceased, to recover the possession of a plantation in said county, of which the said Benjamin F. Tarver was seized and possessed at the time of his death, and which the defendant held and claimed under mesne conveyances from B. C. Tarver as the executor of said Benjamin F. Tarver. The action was commenced on the 20th of May, 1874. The said Benjamin F. Tarver died in said county of Montgomery, where he resided, in November, 1861, having executed his last will and testament, which was duly proved and admitted to record soon after his death, and which contained a clause in the following words: "I will and direct that all of

[Tarver v. Haines.]

my just debts and funeral expenses be paid out of my estate by my executors, herein named, as soon after my decease as may be prudent. I nominate and appoint my son, Britton C. Tarver, my daughter, Ellen E. McWhorter, and Dr. A. B. McWhorter, to be my executors, to execute and carry out this my last will and testament; and it is hereby declared to be my will and desire, that my said executors be not required to give bond and security for the execution and performance of this will. I will and direct that my estate remain and be kept together for the purposes of planting and farming and [under?] the usual modes thereof, until my youngest child living shall arrive at the age of twenty-one years, except as herein otherwise provided and directed. If, however, in the opinion of said executors, it shall at any time be thought prudent and advisable to sell my real estate, or any part thereof, or to purchase other real estate, then I will and direct that discretion be allowed and exercised by them."

The three persons named in the will qualified as executors and executrix soon after the probate; but in December, 1866, Dr. McWhorter and his wife resigned, leaving Britton C. Tarver as the sole acting executor; and on the 9th January, 1867, while proceedings were pending in the Probate Court to compel the said B. C. Tarver to give bond as executor, or be removed, he sold and conveyed the lands to I. T. Tichenor and F. M. Colquitt. This deed recites as its consideration the payment of $19,900, and purports to be executed under the power of sale conferred by the will; but for what purpose the sale was made does not appear by the recitals of the deed, nor was it otherwise shown. The defendant claimed, by mesne conveyances, under this deed. The court ruled, in its charges to the jury, that said B. C. Tarver, as the sole acting executor, had full power to sell and convey the lands; to which charges the plaintiffs excepted, and were thereby compelled to take a nonsuit; and they now move this court to set aside the nonsuit, assigning as error the charges to which they reserved exceptions.

RICE, JONES & WILEY, for appellants.—Section 1609 of the Revised Code applies only to cases where the testator has directed a sale by his executors, or has given them a naked power to sell; and was intended to prevent the failure of the power, on account of the death or resignation of the persons appointed to exercise it. It does not include cases in which a mere discretionary authority to sell is conferred, or where there is a personal trust confided by the testator in the judgment and prudence of the persons selected by himself.—*Clay*

[Tarver v. Haines.]

& *Craig* v. *Hart,* 7 Dana, 1; *Patton* v. *Crow,* 26 Ala. 431;
*Perkins* v. *Lewis,* 41 Ala. 649; *Anderson* v. *McGowan,* 42 Ala.
280, and cases there cited; *Franklin* v. *Osgood,* 2 John. Ch.
21; *Bartlett* v. *Sutherland,* 24 Miss. 395; *Woolridge* v. *Wat-
kins,* 3 Bibb, 349; *Tainter* v. *Clark,* 13 Metc. 220, and cases
cited.

D. CLOPTON, *contra.*—The statute applies to all cases where
a naked power to sell is given to several executors. To
restrict it in this respect, in any manner, would be judicial
legislation—to incorporate words, and insert limitations,
which did not seem proper to the law-making power.—*Bart-
lett & Waring* v. *Morris,* 9 Porter, 266. A "naked power,"
as the words are used in the statute, must be intended to
mean what they meant at common law.—*Ex parte Vincent,* 26
Ala. 145–53. The will in this case gives a naked power to
sell to several executors, and that power attaches to the exe-
cutorial office. That the power is discretionary, does not
make it a personal trust: on the contrary, a power is discre-
tionary, while a trust is imperative.—2 Perry on Trusts, § 473;
Tiffany & Bullard on Trusts, 209; Hill on Trustees, 67, mar.;
*Taylor* v. *Bucham,* 5 How. U. S. 233–67; Story's Equity, § 1061.
The power is not accompanied by any personal trust, but
attaches to the executorial office. An analysis of the will
shows that the duties devolved by it on the executors, briefly
stated, are—1st, to pay the debts as soon as prudent; 2d, to
keep the estate together for the purpose of farming, until
the youngest child arrived at age, except as otherwise pro-
vided and directed; 3d, to provide a suitable maintenance
for each of the children; 4th, to distribute the estate as each
child arrives at age or marries, or as otherwise provided by
the will. All these duties are covered by the conditions of
an executor's bond, and fall within his ordinary functions.
If the executors had given bond, and had exercised this
power of sale, their sureties would have been liable for the
proper application of the proceeds.—*Pettit's Adm'r* v. *Pettit's
Distributees,* 32 Ala. 288; *Smith* v. *King,* 22 Ala. 558. In
*Perkins* v. *Lewis,* cited for appellants, the devise was con-
strued to be to the executors by name as trustees, and not
officially as executors; and the several Kentucky statutes
therein cited, being based on a local statute, are not author-
ity here. *Anderson* v. *McGowan,* 42 Ala. 250, was, also, a
case of special trusts for the benefit of other persons, and
was decided on the authority of *Perkins* v. *Lewis;* and it was
overruled in 45 Ala. 462. That the power attached to the
executorial office, and involved no personal trust, and might
therefore be exercised by the surviving or sole acting execu-

tor, is very clearly shown by the following authorities:—
*Leavens v. Butler*, 8 Porter, 380–94; *Perkins v. Moore*, 16 Ala.
9; *Chighizola v. LeBaron*, 21 Ala. 406; *Johnson v. Bowden*, 37
Texas, 621; *Taylor v. Galloway*, 1 Ohio, 104; *Zebach v. Smith*,
3 Binney, 69; *Evans v. Chew*, 71 Penn. St. 47; *Larned v.
Bridge*, 17 Pick. 339; *Chandler v. Rider*, 102 Mass. 268.

BRICKELL, C. J.—At common law, if a naked power was
given by will, to two or more persons as executors, to sell
lands, it was incapable of valid execution, unless all on
whom it was conferred joined. If one died, or renounced
the executorship, the surviving or acting executors could not
make the sale. It was also the rule, that if the power was
coupled with an interest, then, if one or more died, or re-
nounced, it would survive, and was capable of execution by
the acting executors. If there was a devise to executors by
name, with directions to sell, the descent to the heir was
intercepted, and the freehold passed to the donees, coupling
an interest with the power; and it was capable of execution
by such of the executors as accepted the trust, or remained
alive. The interest feeding the power, and keeping it alive,
was not a personal interest in the trust; it was the posses-
sion, *virtute officii*, of the legal estate over which the power
was to be exercised. A mere devise that executors should
sell lands, not intercepting the descent to the heir, nor pass-
ing any estate to the executors, was a naked power to sell,
which could not be satisfied, unless all joined in its execu-
tion. The distinction between the two devises is very con-
cisely and accurately stated by RICE, J., in *Patton v. Crow*,
26 Ala. 431. See, also, 1 Sugden on Powers, 189; *Osgood v.
Franklin*, 2 Johns. Ch. 1; *Bergen v. Bennett*, 1 Caines' Cases,
16; *Franklin v. Osgood*, 14 Johns. 553; *Peter v. Beverly*, 10
Pet. 563.

There was also another class of powers, which were mat-
ters of personal confidence in the donee, and were not ex-
tended beyond the express words and clear intention of the
donor. They were, therefore, when conferred on several
donees, incapable of execution, unless all united.—Perry on
Trusts, § 496. A class of these were termed discretionary
powers, which were not compulsory on the donee, or, if com-
pulsory, the time and manner of execution were committed
to his discretion.—Hill on Trustees, 731 (marg. p. 485). A
power, resting in personal confidence, is incapable of dele-
gation or transmission, and can be exercised only by those
to whom it is expressly confided.—Hill on Trustees, 736,
(marg. p. 488); Perry on Trusts, §§ 496–500; *Mallett v. Smith*,
6 Rich. Eq. 12; *Tainter v. Clark*, 13 Metc. 220; *Woolridge v.*

*Watkins,* 3 Bibb, 349; *Cole v. Wade,* 16 Vesey, 43; *Bartlett v. Sutherland,* 24 Miss. 395.

A territorial statute, remaining of force until the adoption of the Code, similar to the act of 21 Hen. 8, c. 4, probably borrowed from the Kentucky or Virginia statutes, made a partial change of the rules of the common law, by providing that "the sale and conveyance of lands, tenements, and hereditaments, directed or devised to be sold by any last will or testament, shall be made by the executors, or such of them as undertake the execution of the will, if no other person be therein appointed for that purpose, or if the person so appointed shall refuse to perform the trust, or die before he shall have completed it."—Aik. Dig. 450, § 14. The Code has several sections relating to powers and their execution. Some are mere repetitions, statutory declarations of the common law, as it was well known and understood, while others are introductive of important changes and alterations. The territorial statute, to which we have referred, is not in terms enacted. Instead it is declared: "When lands are devised to several executors, or a naked power given them by will to sell, the survivor or survivors, and the acting executor or executors, when any one or more of them resigns, or refuses to act, or is removed by a court of competent authority, and also an administrator with the will annexed, has the same interest in, and power over such lands, for the purpose of making sale thereof, as the executors named in such will might have had."—R. C. § 1609. This statute, as did the territorial statute, obliterates the common-law distinction, as to survivorship and capability of execution, between a devise of lands to executors with directions to sell, and a naked power of sale. Under its operation, each is capable of execution by the surviving or acting executor. The present statute differs from the territorial statute, by extending the power to an administrator with the will annexed, who would not otherwise have succeeded to it.—*Lucas v. Price,* 4 Ala. 679. If there is a naked power of sale, or a devise with directions to sell for the payment of debts or legacies, which would be the duty of whoever succeeded to the execution of the will; or merely creating the ministerial duty of the conversion of realty into money, for a specific purpose, absolute in terms, not involving, either as to the time and manner of execution, the judgment or discretion of the executors, on which the testator may have relied; the statute advances the intention of the testator, by avoiding its failure because of the absence of a donee to execute it. The consummation of the intent of the testator is the purpose of the statute. It does not propose to circumscribe his power to confer, as

matter of personal confidence, on the executors of his choice and nomination, peculiar and extraordinary authority over his estate, real and personal, to be exercised or not at their discretion, and to require the concurrent judgment of all in its exercise.

The statute is variant from the act of 21 Hen. 8, only by authorizing the acting executor to exercise a naked power, and an extension of power to an administrator with the will annexed.—1 Lomax on Executors, 587. It has not been supposed by the English courts, that the act of 21 Hen. 8 had any operation, when the power was a personal trust or confidence reposed in the persons named as executors.—*Cole v. Wade*, 16 Vesey, 27; *Walter v. Waunde*, 19 Vesey, 424; *Hibbard v. Lambe*, Amb. 309; *Down v. Worrall*, 1 Myl. & Keene, 561. A statute similar to ours exists in several, probably most of the States; and we do not find that in any of them it has been construed to embrace mere discretionary powers, resting in the personal confidence the testator reposed in the executors. In Kentucky, the statute was the same, in legal effect, as our statute prior to the Code, as we have already said. A testator, by his will, left it *in the power of his executors to sell or exchange any part of his estate, real or personal, as they might judge necessary for the advantage of his estate.* But one of the executors qualified, and he, under this power, made sale of part of the testator's lands, the validity of which was disputed. The court, after adverting to the common-law rule, which did not authorize the sale, say it was not authorized by the statute; that only those cases fell within the influence of the statute, where sales were unconditionally directed to be made. When a sale was dependent "on the judgment to be formed by the executors, as to its necessity or expediency for the advantage of the testator's estate, that judgment must be formed by all, and the concurrence of all must be had to the sale and conveyance, to transfer the legal title in the land; for, although where nothing is to be done, by those empowered, but to sell and convey, the statute applies, and authorizes one, when the others refuse, to perform the trust; yet, where the sale is to depend upon some other act to be done by those empowered, the statute contains no provision dispensing with the concurrence of all in the performance of such an act."—*Woolridge v. Watkins*, 3 Bibb, 349. The decision is repeated in *Brown v. Hobson*, 3 A. K. Marsh. 380; *Clay v. Hart*, 7 Dana, 1.

It must frequently occur that a testator will devise lands to his executors, with directions to sell, or, without making a devise to them, will confer a naked power to sell, accompanied with conditions or provisions indicating that the

[Tarver v. Haines.]

devise is made, or the power is conferred, because of the confidence reposed in the executors personally. In all such cases, we concur with what was said in *Anderson v. McGowan,* 42 Ala. 285, that the statute "does not touch a devise to executors, when it is evident from the will that a personal trust is created."

The will before us does not devise the testator's lands to his executors. The descent to the heir was uninterrupted, vesting the freehold *eo instanti* the testator's death. A power of sale, naked, because without an estate or interest in the lands, is conferred. The power is not absolute, unconditional. It is not conferred for the payment of debts, or legacies; for, from the whole will it is evident, the testator never contemplated a sale of any part of his estate, real or personal, for such purpose, but supposed that, untouched by debts, it would remain as a whole, increasing in extent and value, for final distribution and division, when his youngest child arrived at full age. In the changes which might occur before that period, a sale of his real estate, or the purchase of other real estate, might be prudent, and conducive to the interests of his children, who were finally to be the recipients of his entire estate. Therefore, on his executors, if in their opinion it was prudent and advisable, he conferred the discretionary power to make sale of his lands, or to purchase other lands.

Passing over the fact that in his executors and executrix he reposed such unlimited confidence that he relieves them from the execution of bond with sureties for the performance of duty, relying wholly on their integrity and prudence; passing over their relationship to the testator, and their community of interest with the other legatees under the will, the will admits of no other construction than as importing a personal trust and confidence in the executors and executrix; not in one singly, acting alone, without the judgment of the others, but in all concurring in judgment and action. It is to the executors and executrix the discretion is allowed of making the sale of the lands. It must not be overlooked, that not only is the discretion allowed of making sale, but also of purchasing other lands. A large and extraordinary power is conferred over the testator's estate—a power that may advance, or may prove destructive of, the rights and interests of his children. It is *discretion* to exercise power, not *bare power*, which is conferred. The *discretion* is allowed, it is not imperative; and it is the *discretion* of all, when in the *opinion* of all it is prudent and advisable to exercise it. The terms employed in the will are just the terms accepted as importing a discretionary power.--Hill on Trustees, 731

[Harrison v. Simons.]

(marg. p. 485). We cannot doubt that it was the intention of the testator, that the discretion he allowed should be exercised by all his executors, when they should deem it prudent and advisable to exercise it. It is a special trust and confidence, reposed in all, and one was without authority to exercise it.

Reading this will, can it be supposed it would be just to the testator, or consistent with his intention, to declare that the power he has so generously and trustingly confided to his son, his son-in-law, and daughter, could devolve on an administrator with the will annexed, who might be a stranger to him, or, in the course of administration, might be the sheriff, a mere ministerial officer, the accident of a popular election, who, if known to the testator, had never commanded his confidence? Yet, if the statute operates, vitalizing a sale and conveyance by the acting executor, it would have a like operation on a sale and conveyance by an administrator with the will annexed.

The acting executor, Britton, C., was without authority to make the sale and conveyance under which the appellee claims. Though it may operate by way of estoppel, to pass whatever estate he had in the lands, it does not affect the title of appellants.

The judgment is reversed, the non-suit set aside, and the cause remanded.

*Statutory Real Action in Nature of Ejectment.*

